UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | |
|---|---|
| VIVEK SHAH,<br><br>Petitioner,<br><br>v.<br><br>FRANCISCO J. QUINTANA, Warden,<br><br>Respondent. | Civil Action No. 7:17-028-KKC<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Vivek Shah is an inmate at the Federal Medical Center in Lexington, Kentucky. Proceeding without a lawyer, Shah filed a petition for a writ of habeas corpus pursuant to § 2241 in which he challenges the imposition of disciplinary sanctions against him. [R. 1]. For the reasons set forth below, the Court will deny Shah's petition.

In 2013, Shah pled guilty to one count of Transmitting in Interstate Commerce a Threat with the Intent to Extort in violation of 18 U.S.C. § 875(b) and seven counts of Mailing Threatening Communications in violation of 18 U.S.C. § 876(b). *See United States v. Shah*, No. 5:12-cr-172 (S.D. W. Va. 2013). In his plea agreement, Shah admitted that he threatened numerous victims with the death of their family members unless they wired millions of dollars into offshore bank accounts. *See id.* at R. 85 at 9-10. Shah also admitted that he used the Internet and created false identities and aliases in order to carry out his crimes.[1] *See id.* The trial court sentenced Shah to a total of 87 months in prison. *See id.* at R. 95.

---

[1] The Government stated in its sentencing memorandum that "[t]o avoid being traced when he committed criminal acts using his computer, he sought out anonymous, public Internet hotspots; altered the address associated with the computer's network card; and routed his Internet communications through special servers that camouflage users' identities. He also created numerous accounts with the U.S. Postal Service under false names." *United States v. Shah*, No. 5:12-cr-172 at R. 90 at 2 (S.D. W. Va. September 5, 2013).

The Bureau of Prisons (BOP) eventually placed Shah at FMC – Lexington and, while he was at the prison, officials determined that he breached the security of the Unicor computer system. According to a prison incident report:

> Unicor staff notified SIS [special investigative services] they had encountered an inmate who breached their computer security. SIS was then advised Central Office had contacted them in regards to suspicious activity on a server utilized by Central Accounts Payable inmates. As a result of the information received, Central Accounts IT Specialist L. Long and the Systems Administrator Linda Burch reviewed numerous logs and files and determined 'bsmart' had logged into the Central server. During a review of inmates who could have accessed the server, Ms. Burch and Ms. Long determined inmate Shah was the inmate who logged into the system. During an initial interview by the Supervisory Operating Accountant, inmate Shah admitted to accessing several unauthorized servers and to conducting searches in order to gain internet access. Due to inmate Shah's breach of security, staff in Central Office and FMC, Lexington, Unicor staff had to review all of their servers and security protocols, change numerous staff passwords, spend numerous hours to ensure inmate Shah had not obtained any personal identifying information of staff or accessed the internet. Inmate Shah's breach of the computer system greatly interfered with several staff member's ability to concentrate on their normal duty assignments. It should be noted this investigation involved the FBI and AUSA, but was determined not to rise to the level of a criminal act which could be prosecuted.

[R. 1-2 at 11]. Ultimately, a prison official completed the incident report and charged Shah with a Code 198 offense, interfering with a staff member in the performance of duties. [R. 1-2 at 11].

A disciplinary hearing was held two weeks later. [R. 1-2 at 5-10]. According to the discipline hearing officer (DHO), Shah admitted the allegations against him by saying, "Yeah, it's true. Yes, I gained access to that system knowing I shouldn't, and gained information." [R. 1-2 at 5]. The DHO also indicated that Shah "did not submit any documentary evidence" at the hearing and "voluntarily waived all witnesses." [R. 1-2 at 5-6].

The DHO concluded that Shah engaged in prohibited conduct and explained that he was relying on Shah's own statements as well as several documents, including the prison incident report, memoranda from prison officials, handwritten interview notes and statements, and

computer-generated search histories and related information. [R. 1-2 at 6-9]. The DHO summarized this evidence at length and found that it established that Shah committed a Code 299 offense by "disrupting the secure and orderly running of the institution" in a way that was most like a Code 219 offense, which covers "[s]tealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to . . . automated equipment on which data is stored)." [R. 1-2 at 9]. Therefore, the DHO ordered that Shah lose 27 days of good conduct time and forfeit 45 days of non-vested good conduct time. The DHO also imposed other sanctions on Shah, including time in disciplinary segregation and the loss of e-mail and commissary privileges. [R. 1-2 at 9].

Shah appealed the DHO's decision administratively within the BOP. Shah also filed an initial § 2241 petition with this Court. That matter was before Judge Reeves and, since it was apparent from the face of Shah's petition that he had not yet fully exhausted his administrative remedies, Judge Reeves dismissed the petition without prejudice. *See Shah v. Quintana*, No. 5:16-cv-472-DCR (E.D. Ky. Jan. 9, 2017). The United States Court of Appeals for the Sixth Circuit affirmed that decision. *See Shah v. Quintana*, No. 17-5053 (6th Cir. July 17, 2017).

Shah, however, filed another copy of his § 2241 petition once he fully exhausted his administrative remedies. [R. 1]. That petition is now before this Court for screening pursuant to 28 U.S.C. § 2243. Shah sets forth numerous claims and asks the Court to enter an order vacating his disciplinary conviction and restoring his good time credits. [R. 1-1 at 15-21]. More recently, Shah filed a motion asking the Court to reassign his latest petition to Judge Reeves. [R. 13].

As an initial matter, the Court will deny Shah's motion to reassign this case. To be sure, Judge Reeves handled and dismissed Shah's initial § 2241 petition without prejudice. However, that matter only involved the fact that Shah had not fully exhausted his administrative remedies;

Judge Reeves did not address the substance of Shah's petition. Thus, there would not be a substantial savings of judicial time and resources by reassigning this matter. *See* Local Rule 40.1. Since Shah has not articulated another reason that would justify reassigning his case, the Court will deny his motion.

Turning then to the merits of Shah's petition, the principal question before this Court is whether there was "some evidence" in the record to support the DHO's decision in this case. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013). This is a very low threshold. Indeed, the Court does not examine the entire record or independently assess the credibility of witnesses. *Hill*, 472 U.S. at 455. Instead, the Court merely asks "whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56 (emphasis added); *see also Higgs v. Bland*, 888 F.2d 443, 448-49 (6th Cir. 1989) (discussing this standard).

There was certainly some evidence to support the DHO's decision in this case. After all, prison officials conducted an extensive investigation into the events in question and provided the DHO with numerous documents indicating that Shah engaged in the prohibited conduct. The DHO then summarized this evidence in his report and specifically relied on it in deciding that Shah committed a Code 299 offense. [R. 1-2 at 6-9]. Thus, the very low threshold set forth in *Hill* has been satisfied.

Shah, however, suggests there was *no* evidence to support the DHO's decision [R. 1-1 at 15]. But that suggestion is off base, especially since Shah essentially admitted in his previous and current § 2241 petitions that he engaged in the conduct alleged by prison officials. In fact, Shah repeatedly explained precisely how he used his prison work computer to create an account with the username "bsmart" and also access the internet and multiple servers. [R. 1-1 at 2-9]. At one

4

point, Shah even admitted that he gained access to "BOP serves, DOJ servers, certain U.S. Department of Treasury servers . . . , all U.S. Attorneys' email accounts . . . , DOJPURS account usernames and passwords with Chase Bank, GSA WebPay account login information for Unicor employees, etc." [R. 1-1 at 7]. The Sixth Circuit highlighted this language from Shah's previous petition in its own recent decision and, in doing so, recognized that "Code 299, applying Code 219, indisputably applies to such conduct." *Shah v. Quintana*, No. 17-5053, at 3 (6th Cir. July 17, 2017). In sum, there was clearly evidence to support the DHO's decision, and Shah himself admitted that he engaged in the prohibited conduct.

Nevertheless, Shah claims he was denied certain procedural protections that he was due. Under the law, Shah was entitled to advanced notice of the charge against him, the opportunity to present evidence and witnesses in his defense, and a written decision explaining the grounds used to determine his guilt of the offense. *See Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). Shah's submissions indicate that prison officials provided him with these procedural protections.

Still, Shah suggests that he was not provided with advance notice of the charge against him because he was initially charged with a Code 198 offense yet later convicted of a Code 299 offense. [R. 1-1 at 16-17]. The purpose of the advance notice requirement, however, "is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *See Wolff*, 418 U.S. at 564. And, in this case, Shah's submissions make it clear that, well in advance of the disciplinary hearing, he was fully aware that prison officials were alleging that he improperly breached the security of the Unicor computer system. [R. 1-2 at 16-17]. Thus, there is no merit to Shah's lack-of-notice claim. *See also Santiago-Lugo v. Warden*, 785 F.3d 467, 476 (11th Cir. 2015) (rejecting another petitioner's analogous argument and noting that other circuits have consistently rejected similar claims).

5

Shah's argument that he was denied the opportunity to present evidence and witnesses in his defense is also unavailing. [R. 1-1 at 17-18]. As an initial matter, the DHO's report indicates that Shah "did not submit any documentary evidence" at the hearing and "voluntarily waived all witnesses." [R. 1-2 at 5-6]. This is consistent with the another form submitted by Shah which appears to show that he initially requested witnesses to appear on his behalf, but then stated that he "voluntarily . . . waived all requests for witnesses." [R. 1-2 at 16]. Although Shah now claims that he was "coerced into waiving" his right to call these witnesses [R. 1-1 at 18], he offers no factual allegations to support this generic assertion. And while Shah provides a list of evidence and witnesses he would have liked to have offered at his disciplinary hearing [R. 1-3], he does not explain in any meaningful way how that evidence or those witnesses would have aided his defense, especially since he admitted that he engaged in the prohibited conduct. *See also Hatch v. Wilson*, No. 6:09-cv-109-GFVT, 2009 WL 2877222, *8 (E.D. Ky. 2009) (emphasizing that the petitioner did "not offer a particularized explanation of how the absence of . . . witnesses prejudiced his defense").

Finally, Shah asserts several other claims in his petition, including arguing that the Code 299 offense is unconstitutionally vague, the DHO prejudged his case, and the DHO's report contained "illogical jargon," among many other things. [R. 1-1 at 15-21]. However, the Sixth Circuit has already rejected Shah's vagueness argument and his other claims are either undeveloped, unsupported, contradicted by his own submissions, or plainly without merit. And even if the Court were to conclude that the procedures surrounding Shah's disciplinary hearing were somehow deficient, there is certainly no indication that any errors were of a constitutional magnitude or would otherwise justify granting Shah's habeas petition.

Accordingly, it is hereby **ORDERED** as follows:

1. Shah's motion to reassign this case [R. 13] is **DENIED**.

2. Shah's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1] is **DENIED**.

3. All other pending motions are **DENIED AS MOOT**.

4. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

5. A corresponding judgment will be entered this date.

Dated November 14, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY